**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

DORAN LAW OFFICE,                    )
                                     )
                 Plaintiff,          )
v.                                   )          Case No. 14-2046-JAR-GLR
                                     )
STONEHOUSE RENTALS, INC.,            )
                                     )
                 Defendant.          )
_____     )

## MEMORANDUM AND ORDER

Plaintiff Doran Law Office filed this action seeking to recover legal fees and expenses

owed by Defendant Stonehouse Rentals, Inc.  Defendant did not answer the Complaint within

the time allowed by law and stated on the Summons, and default was entered by the Clerk of the

District Court.  Upon application of Plaintiff, the Court then entered default judgment in the

amount of $133,024.30.  Defendant filed a Motion to Set Aside Entry of Default and Default

Judgment (Doc. 12).  An evidentiary hearing was held September 10, 2015.  After considering

the arguments, evidence, and testimony presented by the parties, the Court is prepared to rule.

For the following reasons, the Court denies Defendant's motion.

## I.      Factual and Procedural Background

Plaintiff Doran Law Office filed its complaint against Stonehouse Rentals, Inc.

("Stonehouse") on January 31, 2014.[1]  In the Complaint, Plaintiff states that Defendant is a

Kansas corporation registered with the Kansas Secretary of State, with its registered agent listed

as Salah Ibrahim and its registered office on record as 22858 Fall Leaf Road, Linwood, Kansas.

Plaintiff hired a special process server, Aristocrat Investigations, who attempted to

_____

[1]Doc. 1.

personally serve Defendant's president and resident agent, Salah Ibrahim.  Plaintiff then

attempted service of process by certified mail, on resident agent Ibrahim at Stonehouse's

registered office, addressing the certified mail to resident agent Ibrahim at the Fall Leaf Road

address.[2]  On March 6, 2014, the United States Postal Service unsuccessfully attempted to

deliver the certified mail to Ibrahim, and the following Notice was left at the Fall Leaf Road

address:

> **Notice Left (No Authorized Recipient Available)**
> We attempted to deliver your item at 11:25 am on March 6, 2014
> in LINWOOD, KS 66052 and a notice was left because an
> authorized recipient was not available.  You may arrange
> redelivery by visiting http://www.usps.com/redelivery or calling
> 800-ASK-USPS, or may pick up the item at the Post Office
> indicated on the notice.  If this item is unclaimed after 15 days then
> it will be returned to the sender.  Information, if available, is
> updated periodically throughout the day.  Please check again later.[3]

The certified mail was marked unclaimed and returned on March 21, 2014.[4]

Plaintiff then requested the Kansas Secretary of State to accept appointment for service

of process of the Kansas Defendant corporation, pursuant to K.S.A. § 60-304(f).[5]  Plaintiff stated

in the request that it made a direct attempt to serve the resident agent Ibrahim at the

corporation's registered office, and enclosed a certified copy of the return filed with this Court

showing service on the resident agent has been attempted, and that the resident agent of the

---

[2]K.S.A. § 60-303(c) (allowing service of process by return receipt delivery, effected by certified mail).

[3]Hrg. Ex. 65.

[4]*Id.*

[5]Doc. 4, Ex. 1.

corporation could not with reasonable diligence be found at the registered office.[6]  The Secretary

of State then forwarded notice of his receipt of process and another copy of the Complaint and

Summons to Defendant's resident agent Ibrahim at the corporation's registered office on Fall

Leaf Road.[7] The certified mail was marked unclaimed and returned on April 22, 2014.[8]

Defendant did not answer the Complaint within the time allowed by law and stated on the

Summons, and default was entered by the Clerk of the District Court on May 8, 2014.[9]  The

Court then entered default judgment against Defendant on June 10, 2014, in the amount of

$133,024.30, plus interest.[10]  Thereafter, Doran sent the following notices by certified mail to

Defendant's registered office, all of which went unclaimed: Plaintiff's Proposed Bill of Costs

(posted July 7 thru July 28, 2014);[11] Registration of Judgment in State Court (posted August 27

through September 12, 2014);[12] and Copy of State Court Proof of Service (November 11 through

November 25, 2014).[13]

Defendant alleges that it learned that default judgment had been entered in this case on

February 24, 2015, when Ibrahim attempted to sell real estate in Coffey County, Kansas, and

learned that Plaintiff had registered the judgment in a number of counties in Kansas.  Defendant

---

[6]*Id.*

[7]Hrg. Ex 66.

[8]*Id.*

[9]Doc. 6.

[10]Mtn. for Default J., Doc. 7; Judgment, Doc. 8.

[11]Hrg. Ex. 67.

[12]Hrg. Ex. 68.

[13]Hrg. Ex. 69.

moved to set aside the Clerk's entry of default and the default judgment on April 6, 2015.[14]

### Salah Ibrahim

Salah Ibrahim is the President and sole officer of Stonehouse, a rental and investment company that has been in business since 1995.  Ibrahim has always been the resident agent for Stonehouse, and testified that he understood the significance of maintaining a resident agent and resident office.  Ibrahim is a civil engineer and considers himself a real estate investor; he travels frequently as part of his duties with the company.  Stonehouse also employs Cheri Hayes, Ibrahim's long-time partner, as a contract manager and Ibrahim's assistant.  Ibrahim testified that Stonehouse owns "hundreds" of properties in the state of Kansas, and that most are residential.  The business and mailing address for Stonehouse is P.O Box 881, Lawrence, Kansas.  At the time this lawsuit was filed, the registered office for Stonehouse was the Fall Leaf Road address, which is Ibrahim's second home in rural Linwood, Kansas; Ibrahim has since changed that registered office to his residence in Lecompton, effective May 1, 2015.[15]

Ibrahim testified that Stonehouse does not conduct business from the Fall Leaf Road address, the house is not typically occupied, and that he goes to the house anywhere from twice a week to once every three months.  He further testified that the Fall Leaf Road house is also Ms. Hayes's residence and the couple sometimes goes there on weekends to get away from the city.

In October 2005, the corporate charter of Stonehouse was revoked by the Secretary of State, due to failure to designate or maintain a resident agent and resident office.[16]  Ibrahim

---

[14]Doc. 12.

[15]Hrg. Ex. 75.  The Fall Leaf Road address remains the resident office for Ibrahim's companies South Auto Sales, LLC, Sumerian, LLC, and Paladium Group, LLC.  Hrg. Exs. 76, 77, 78.

[16]Hrg. Ex. 74.

testified that there was no problem with the registered office at that time, and that the issue with the Secretary of State concerned the filing of Stonehouse's annual report.  Stonehouse continued to use the Fall Leaf Road address as the registered office after the corporation was reinstated, even though the mail there was not checked regularly.  Ibrahim confirmed that the Certificate of Reinstatement issued in 2005 specifically states that a post office box is not permitted for a registered office in Kansas.[17]  Nevertheless, Ibrahim testified, the website for the Secretary of State lists the P.O. Box as the mailing address for Stonehouse.  Ibrahim testified that as part of her management duties, Ms. Hayes picked up the mail at the Fall Leaf Road address most of the time, and would always claim certified mail if a notice was left in the mailbox.  Ibrahim testified that it was his choice to serve as resident agent for Stonehouse, even though he used an attorney as resident agent with their law office as resident office for other of his businesses.  He testified that he does not ignore certified mail notices because some of Stonehouse's tenants send their rental payments via certified mail.

Ibrahim testified that Patrick Doran represented Stonehouse in a foreclosure action brought in Geary County, Kansas by Lawrence Bank, as well as a second lawsuit brought by the bank in Franklin County, Kansas.  Doran was brought into the case by another lawyer, Jonathan Laurans.  Ibrahim testified that there was no engagement agreement and that Stonehouse paid Doran Law Office a retainer of between $3000 to $5000 per month.  Ibrahim testified that Doran knew where Ibrahim lived in Lawrence and had been to his house; Doran had also been to Ibrahim's other businesses, including a used car lot in Eudora, Kansas.  Ibrahim testified about a ledger prepared by Stonehouse that reflected the total amount of legal fees paid Doran Law

---

[17]The Certificate of Reinstatement states that the address of the registered office in Kansas "must be a street address. A post office box is unacceptable."  Hrg. Ex. 74.

Office as $52,600.00.[18]  Ibrahim testified that most of those payments were hand-delivered by Ms. Hayes after Doran called her to request a check.  The payments began in August 2012, and the last payment was made December 10, 2013, in the amount of $2000.00.

Ibrahim testified that Doran's role in the ultimate settlement of the case was minimal and expressed dissatisfaction with the representation he received from Doran Law Office.  He testified that Doran did not want to settle the lawsuit because he wanted to continue to receive the $3000.00 per month payments and that he engaged yet another attorney, Steve Mustoe, who successfully settled the case.  Ibrahim testified that he received one invoice from Doran Law Office for $7600.00 in July 2012, but never received any other invoices, statements, or phone calls from Doran or Doran Law Office about additional legal fees owed.  That invoice showed an hourly rate of $250 per hour.  Ibrahim believes that as of December 2013, Stonehouse had paid all amounts owed to Doran Law Office.

Ibrahim testified that he learned of the lawsuit filed by Doran Law Office in February 2015, when he attempted to sell real estate and was advised by a title company that there was a judgment filed against Stonehouse.  Ibrahim claims that he: did not receive a copy of the Complaint filed in January 2014; did not receive any notification from the Secretary of State's office that a complaint had been filed or served; did not receive a copy of the judgment entered in this case; did not receive an order in this case assessing costs; did not receive any pleadings from Doran indicating that the judgment had been registered in various counties in Kansas; did not receive any letters or emails from Doran transmitting invoices, other than one in July 2012; and did not know that Doran Law Office claimed additional legal fees owed.  Ibrahim testified

---

[18]Hrg. Ex. B.

that when he learned of the judgment, he immediately engaged counsel to set aside the default judgment.

Ibrahim testified that had he received statements for legal fees still owing from Doran Law Office, he would have called Doran and gone to his office or met him to confront him because it would be shocking to him that Doran would claim that he was owed fees.  Ibrahim testified that it was not his practice to ignore statements for fees and that he believes that Stonehouse overpaid Doran Law Offices for the legal work performed.

Ibrahim testified about the email exchange with Doran in August 2008, where Doran referenced a communication he had with the Secretary of State's office regarding service in the Franklin County lawsuit.[19]  Ibrahim confirmed that Doran explained that if a corporation's registered agent cannot be found and the plaintiff serves the Secretary of State, it can be a "trap" for corporate defendants.  Ibrahim further confirmed that Doran Law Office utilized this method of service in this case, which did not result in Ibrahim or Stonehouse receiving notice of service of process.  When Doran produced his case file as requested by Stonehouse's counsel in this matter, Ibrahim testified that the file was in disorder and he found a group of invoices and letters addressed to him at the P.O. Box that he had never seen before.[20]  Included in this correspondence was a welcome/engagement letter from Doran Law Office, which quoted Doran's hourly rate at $250. Although the corresponding memos did not include an address, all of the invoices attached were addressed to Ibrahim at the  P.O. Box.[21]

---

[19]Hrg. Ex. C.

[20]Hrg. Ex. D.

[21]Hrg. Exs. F, 52.

Ibrahim testified that he typically communicated with Doran by phone or email, and that he could not recall receiving anything from Doran in the mail.  In fact, Ibrahim noted, it was a running joke in his office about not getting anything in the mail from Doran because he does not trust the mail or the stamp is too expensive, as demonstrated by his willingness to drive from Kansas City to Lawrence to pick up his monthly check for fees.

On cross-examination, Ibrahim admitted that Stonehouse was often the target of litigation, and default judgment had been entered against it by various courts.[22]  Ibrahim denies avoiding service in this case or any other case, but confirmed that unclaimed certified mail notices had been sent to the P.O. Box and Lecompton address in other lawsuits.[23]

### Cheri Hayes

Cheri Hayes is in a personal relationship with Ibrahim, and has been employed as a contract worker for Stonehouse for fifteen years.  She does accounts payable, accounts receivable, property management, and deals with tenants and leases.  Hayes testified that she works mostly from her vehicle, and averages over 250 miles a day.  She typically checks the Stonehouse P.O. Box for mail at least once a day.  Hayes acted as the liaison between Doran and Ibrahim—she picked up documents, spoke with Doran on the phone, corresponded via email, and delivered checks to him—but testified that she does not recall ever receiving anything through the mail from Doran at the P.O. Box.  Hayes repeated the office joke that they had never seen anything in the mail from Doran because she did not think he could afford the postage stamp.  Hayes testified that she saw copies of the correspondence and invoices from Doran for

---

[22]Hrg. Exs. 73, 80.

[23]Hrg. Exs. 72, 79, 81, 86, 87.

the first time when Doran produced his case file in this matter.

Hayes stated that only she and Ibrahim opened mail for Stonehouse.  Hayes confirmed that the Fall Leaf Road address is her residence; she is not there most days because of her travel for work.  The gate at the end of the driveway is locked when no one is there and there is a no trespassing sign posted.  A mailbox is outside the gate.  Hayes testified that she does not pick up any mail for Stonehouse at the Fall Leaf Road address, but instead leaves it for Ibrahim.  She explained that certified mail sent to the P.O. Box would sometimes go unclaimed because she could not get to the post office during its hours of operation.

Hayes admitted that on February 24, 2014, she left a voice message for Doran at his office referencing the default judgment in this case, accusing him of embezzling from Stonehouse by refusing to settle the case for which he was hired to represent the company, and threatening him with an ethics complaint if the judgment in this case was not reversed.  Hayes also admitted that in a separate lawsuit filed by Equity Bank against Stonehouse, the court found that her testimony was not credible on whether or not mail was sent between Stonehouse and its lender.[24]

### *Patrick Doran*

Patrick Doran testified that Doran Law Office is a d/b/a of Patrick Doran, and that there is no LLC or incorporation, effectively making him the Plaintiff in this case.  Doran testified that he cautioned Ibrahim that service of process on the Secretary of State could be a trap for corporate defendants.  He denied that at the time he wrote the email, he knew that Stonehouse had previous problems receiving service of process at the Fall Leaf Road address.  Doran sent

---

[24]Hrg. Ex. 82.

invoices to Stonehouse at the P.O. Box in Lawrence, but did not utilize that address for service of process because it was not Stonehouse's registered office.  Doran testified that he attempted personal service of Ibrahim through a special process server, but was unsuccessful.  He denied that he then attempted service at the Fall Leaf Road address knowing that it was unlikely to result in service upon Stonehouse.  Instead, Doran explained, Ibrahim told him that the address was good because mail was being picked up and checked regularly, and it was also Hayes's residence.  He conceded that the Secretary of State's office had told him that it had served Stonehouse several times, which led him to raise the issue of avoidance of service with Ibrahim; but that Ibrahim allayed Doran's fears and denied that he was avoiding service.  Doran testified that he believes that Stonehouse and/or Ibrahim was avoiding service in this lawsuit because of the way the corporation was set up with a registered office that was an unoccupied, locked residence on a rural gravel road.  In Doran's opinion, Ibrahim intentionally set up the resident office this way because he did not want to be served in this or many other lawsuits, so he made it as difficult as possible to do so.

Doran testified that at Ibrahim's request, he sent multiple invoices for his legal services to Stonehouse that were addressed to Ibrahim at the P.O. Box in Lawrence; all of the checks he received as payment were from Stonehouse at the same P.O. Box.  Doran testified that he represented Stonehouse for approximately seventeen months, and that his total bill for services was approximately $178,000, as reflected in the thirteen invoices sent.[25]  Doran testified that when he would comment to Ibrahim about the increasing balance as reflected in the invoices, Ibrahim would shrug it off.  Doran testified that after a year of trying to collect from

---

[25]Hrg. Ex. 52.

Stonehouse,[26] he sent a demand letter to Ibrahim at the P.O. Box on January 15, 2014, which included a statement indicating the balance owed.[27]  Doran testified that Ibrahim never responded to the demand letter or any of his calls, correspondence or emails

After he obtained default judgment, Doran registered the judgment in various Kansas counties where Stonehouse owned property, but took no further steps to enforce the judgment against Stonehouse, such as an aid in execution or request for garnishment.  Doran denied that he was trying to keep the fact of the default judgment secret until the one-year statute of limitations under Fed. R. Civ. P. 60(b) has passed.  Instead, Doran testified, he followed the lead of other judgment creditors against Stonehouse, hoping that Stonehouse would learn of the judgment because of the nature of its real estate business, and that he would get paid.  Moreover, Doran testified, he sent the required notices of registration of the judgment to Stonehouse by certified mail.

Doran testified that he does not typically have a fee agreement or engagement letter that is signed by the client.  Instead, he would meet with the client and tell them the terms of his engagement.  In this case, Doran testified, he had lunch with Jonathan Laurans and Ibrahim the day before the engagement letter was sent out on May 22, 2012;[28] Doran told Ibrahim he would send out the standard engagement letter and Ibrahim said that was fine.  Doran testified that this is the first time he has sued a client for fees in the thirty years he has practice law.  Doran's engagement letter stated that his hourly fee was $250, that he would invoice not more frequently

---

[26]Hrg. Ex. 53.

[27]Hrg. Ex. 64.

[28]Hrg. Ex. 51.

than once a month, and that payment on the invoices was due within thirty days of the invoice date, with interest due on past due amounts.  Doran testified that there was no agreement with Stonehouse to pay a retainer of $3000 to $5000 per month; instead, that was the amount that Stonehouse paid after Ibrahim told Doran that money was tight because of other litigation and that amount was all he could afford to pay towards his account.  Stonehouse was subsequently sued by Lawrence Bank in Franklin County, Kansas as well, and Doran testified that the scope of the work was much greater that had been originally envisioned.  At one time, the parties discussed Ibrahim providing a vehicle to Doran as part payment for his services, but the car was not in good condition and Doran walked away from the deal, reversing the $9300 credit on his invoice.

With respect to his representation of Stonehouse in the Geary County, Kansas lawsuit, Doran testified that in his opinion, Stonehouse came out ahead in the litigation, but not as well as it would have had Ibrahim followed his and Laurans's advice and settled the case earlier.  Doran testified there were a number of settlement discussions with Lawrence Bank and Kaw Valley Bank, both with Laurans as co-counsel and then with Doran alone after Laurans withdrew for health reasons in October 2012.  Doran testified that the lawsuit, which involved allegations of a nominee loan as well as counterclaims by Stonehouse, did not settle until after an eight-day trial and submission of findings of fact and conclusions of law, despite Laurans's concern that Ibrahim might have criminal exposure with regard to the loan transaction.  Doran recounted a conversation with Ibrahim after a court hearing in March 2013, where they talked about the judge being critical of the parties in the case because they had been dealing with a convicted felon and how Doran was concerned that would effect their ability to succeed in the case.  Doran

testified that he encouraged Ibrahim to settle for many reasons, including the increased cost of proceeding to trial and Ibrahim's concern that the balance on his account was going up.  Doran followed up this conversation in a two-page memo attached to an email to Ibrahim the next day, dated March 15, 2015.[29]  In that memo, Doran further stated his concerns about the increase in expenses as the case progressed, the fact that the $3000 monthly payments were appreciated but the account balance was growing, that a trial would be expensive, and encouraged Ibrahim to settle the case.  Doran denied that he "repeatedly begged" Ibrahim to allow him to remain as counsel for Stonehouse, and that Ibrahim did not take him up on his offer to voluntarily withdraw from the case.  Doran confirmed that Steve Mustoe became involved in the case after trial, and with his involvement the case was ultimately settled in November 2013.

### Kyle Jones

Kyle Jones, President and one of the owners of Aristocrat, testified that an employee of Aristocrat attempted to serve Ibrahim at three different addresses: the registered office on Fall Leaf Road;  a used car lot owned by Ibrahim in Eudora, Kansas; and Ibrahim's residence in Lecompton, Kansas.  Jones testified that he did not find Ibrahim, and after a month, Doran instructed him to discontinue efforts at serving Stonehouse through personal service on its resident agent Ibrahim.

### Richard Brauer, Jr.

Richard Brauer, Jr., an employee of the United States Post Office, testified that he was the mail carrier for the Fall Leaf Road address in Linwood.  Brauer testified that the Fall Leaf Road house is located on a gravel road, with approximately eight other houses.  Brauer

---

[29]Hrg. Ex. 55.

confirmed that there is a "no trespassing" sign posted, and a gate at the end of the driveway that is almost always closed.  Brauer does not open the gate when he delivers the mail, but leaves it in a mailbox outside the gate.  The mail Brauer delivers to the Fall Leaf Road address includes mail addressed to Stonehouse as well as to Ms. Hayes.

 Brauer explained his procedure for delivering certified mail when the Fall Leaf Road address gate was closed: he would leave a pink card similar to Exhibit 89, filled out with the recipient's name and address and what the certified item is, with instructions that if the recipient is not home, they can pick up the item at the post office the next day.  Brauer explained that when he leaves a first notice, he scans the certified number and leaves the card; a second and third notice, if necessary, is generated by the clerk at the post office and delivered to the address. After three attempts, the mail is marked "unclaimed," and returned to the sender.

Brauer testified that during the time he has been delivering mail to the Fall Leaf Road address, the mail is picked up periodically, but not daily.  Brauer confirmed that Exhibits 65, 66, 67, 68, and 69 are all certified mail that he attempted to deliver to the Fall Leaf Road address that were unclaimed, and that he left notices, either filled out by the clerk or himself, to advise whoever picked up the mail that they had certified mail.  Brauer testified that a person who had a notice delivered to the Fall Leaf Road address would claim the mail at the Linwood post office, which he thought was open Monday through Friday from eight a.m. until noon, and from ten a.m. until noon on Saturday.  Brauer explained the procedure for when mail is piling up at an address: after ten or fifteen days, the mail carrier brings the mail to the post office as unclaimed and it is kept there until the addressee claims it; delivery to the address is shut down until the unclaimed mail is picked up.  Brauer testified that he never shut down delivery of mail to

Stonehouse at the Fall Leaf Road address, and that someone was picking up the notices he left for the certified mail.

### *Jonathan Laurans*

Finally, Laurans testified that he represented Stonehouse in the Geary County lawsuit, and brought Doran in as co-counsel in May 2012, with Ibrahim's approval.  Laurens confirmed that there was never an agreement for Doran Law Office to accept only $3000 a month as a flat fee, but that Ibrahim chose to pay that amount without regard to the actual fees billed.  Laurans eventually withdrew from representation after he was involved in a cycling accident.

## II.    Discussion

Fed. R. Civ. P. 55(c) states that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)."  Because a default judgment has already been entered in this case, it is appropriate to proceed under Rule 60(b).[30]  Under Rule 60(b), a court may relieve a party from a final judgment for several reasons, including "mistake, inadvertence, surprise, or excusable neglect" or if "the judgment is void."[31]  Defendant seeks relief pursuant to Rule 60(b) from the Default Judgment, arguing that the judgment is either void for lack of proper service or due to excusable neglect.

### A.    Rule 60(b)(4)—Void Judgment

Under Fed. R. Civ. P. 60(b)(4), a judgment is void if the court did not have the power to

---

[30]"[T]he good cause required by Fed. R. Civ. P. 55(c) for setting aside entry of default poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from judgment under Fed. R. Civ. P. 60(b)." *Dennis Garberg & Assoc., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 775 n.6 (10th Cir. 1997).

[31]Fed. R. Civ. P. 60(b)(1) and (4).

enter it.[32]

> A default judgment in a civil case is void if there is no personal
> jurisdiction over the defendant.  And service of process [under
> Fed. R. Civ. P. 4] provides the mechanism by which a court having
> venue and jurisdiction over the subject matter of an action asserts
> jurisdiction over the person of a party served.[33]

Defendant contends that the default judgment is void because it was never properly

served.  Plaintiff maintains that it properly served Defendant pursuant to Fed. R. Civ. P. 4(e), on

March 25, 2014.  Under Rule 4(e)(1), it is sufficient for Plaintiff to follow Kansas law for

serving summons.  Subsection (e)(1) allows for service by "following state law for serving a

summons in an action brought in courts of general jurisdiction in the state where the district

court is located or where service is made."  Kansas allows service of process on a corporation

by:

> (1) Serving an officer, manager, partner or a resident, managing or
> general agent;
> (2) leaving a copy of the summons and petition or other document
> at any of its business offices with the person having charge thereof;
> or
> (3) serving any agent authorized by appointment or by law to
> receive service of process, and if the agent is one authorized by
> statute to receive service and the statute so requires, by also
> mailing a copy to the defendant.[34]

Service of process may be made by return receipt delivery, effected by certified mail.[35]  Under

K.S.A. 60-304(f), if a corporation's resident agent cannot "with reasonable diligence" be found

---

[32]*Gschwind v. Cessna Aircraft Co.*, 232 F.3d 1342, 1346 (10th Cir. 2000).

[33]*Hukill v. Okla. Native Am. Domestic Violence Coal.*, 542 F.3d 794, 797 (10th Cir. 2008) (internal quotations and citations omitted).

[34]K.S.A. 60-304(e).

[35]K.S.A. 60-303(c)(1).

at the registered office in this state, that Kansas corporation "irrevocably authorizes the secretary

of state as its agent to accept on its behalf service of process."[36]

Thus, Plaintiff had several statutory options available to it in effecting service upon

Defendant.  The record shows that Plaintiff initially attempted to personally serve Ibrahim at

three different addresses.  Plaintiff then attempted to serve resident agent Ibrahim at the

registered office designated with the Secretary of State.  When that notice went unclaimed,

Doran set into motion the steps necessary to serve Defendant through the Secretary of State in

accordance with § 60-304(f), and March 25, 2014, the Secretary of State accepted service of

process for Defendant in this lawsuit.

Defendant however, maintains that Plaintiff did not exercise "reasonable diligence" when

it mailed a certified copy of the summons and complaint to an address that Plaintiff knew was

likely not to result in service.  Defendant cites to the August 2012 email exchange, where Doran

described this method of service as a "trap" for corporate defendants—a trap that former counsel

allegedly sprung on Stonehouse.  Ibrahim testified that neither he nor Stonehouse received a

copy of the Complaint and summons.  Ibrahim contends that Doran knew that Stonehouse had

"previous problems" with receiving service of process at the Fall Leaf Road address and that he

used that knowledge to his advantage.

The referenced email exchange is between Doran and Ibrahim dated August 29, 2012,

where Doran writes about entering his appearance in the Franklin County lawsuit after service

was accepted by the Secretary of State; as an aside, Doran voices concerns about the status of

Defendant's resident agent:

---

[36]K.S.A. 60-304(f).

Also, per our discussion on Monday in Lawrence, I will enter my appearance on behalf of Stonehouse in the Franklin County lawsuit. Based on my conversation this morning with Cheri and then my visit with the Secretary of State office, we should treat 8/10 [as] the service date, since that is the date the SoS office sent the summons + petition to Stonehouse's PO box in Lawrence. . . . By the way, Salah, my contact in the Secretary of State's office told me that their office had served Stonehouse "several times." This was a surprise to me, since our earlier discussions were whether service upon the SoS was legitimate. This method of service can be a trap for corporate defendants. What I mean is that if the registered agent cannot be found and the plaintiff serves the SoS, the SoS then sends certified mail to the last known address in their records—for Stonehouse, this is the PO box. The SoS files a return of service in the lawsuit, *whether the certified mail is picked up or not*. A default judgment could be entered against a defendant based simply on (1) service on the SoS and (2) the SoS return of service that is filed. While there is some benefit to avoiding service of lawsuits, this benefit is of no use if the company then suffers a default judgment because the SoS accepted service. You've not asked my opinion on this, but a registered office that can regularly (and promptly) accept service can be a real benefit. A lot of law firms offer this service at little or possibly no cost. You might think about Brennan or some other attorney friend in Lawrence handling this administrative chore for you.[37]

Ibrahim responded:

The resident agent of Stonehouse Rentals Inc's address is 22858 Fall Leaf Road and this is a property owned by Stonehouse, or what we call the "north house." It is in the country, with a mailbox. This property is a second home to me and either Cheri or I goes there either once a week or once every two weeks. I believe your suggestion is valuable. In reality, Moundview LLC (another company of mine) has Brennan Fagan's law office as a registered agent. FYI, there was no avoiding of service, especially on this case. I would love to take on Liebold every day of the week.[38]

Defendant's characterization of Doran's comment must be taken in context—contrary to

---

[37] Hrg. Ex. 56.

[38] *Id.*

Defendant's allegation, Doran testified that he was warning Ibrahim about the consequences of failing to maintain a proper resident agent and registered office for Stonehouse Rentals; Ibrahim responded that the Fall Leaf Road address was his second home and the mail was regularly picked up by either Hayes or himself.  This is not a situation where a party ignored information it had about a proper address, or where a party knew the resident agent was no longer at that address.  Rather, the record before the Court shows that Ibrahim has a long history at the Fall Leaf Road address designated as Defendant's registered office.  In addition to Stonehouse, three of Ibrahim's other businesses utilize the Fall Leaf Road address as its registered office.  And, Ibrahim testified in the Geary County lawsuit in 2012 that he spends time at the 22858 Fall Leaf Road property, that Ms. Hayes, a member of Ibrahim's management as well as his girlfriend, lives at the house, and that the house is the office address for Defendant.

Moreover, the evidence shows that Doran's attempt was made with reasonable diligence to locate the registered agent at its registered office.  Doran retained a private process server to attempt to serve Ibrahim personally at three different addresses—the Fall Leaf Road address, Ibrahim's used car lot, and Ibrahim's residence.  Plaintiff then attempted to serve Ibrahim by certified mail at the resident office on Fall Leaf Road; after three notices were left at the residence, the mail was returned as unclaimed.  It was only then that Plaintiff resorted to service on the Secretary of State.  Thus, no less than six notices of certified mail were left at the Fall Leaf Road Address:  three regarding the certified mail from Doran, and three from the Secretary of State.

Nevertheless, Defendant argues that Plaintiff could have found Ibrahim with minimal effort and should have attempted service by certified mail at the P.O. Box that Stonehouse used

as its mailing address.  As Defendant notes, however, service of a resident agent at a post office

box is not authorized by statute; indeed, it states on the Secretary of State form that a corporation

must not use a post office box for its registered office.[39]  Plaintiff's attempt was more than

sufficient to meet the reasonable diligence requirements of the statute.  And even if service on

the P.O. box was an option, Ibrahim repeatedly testified that multiple invoices and other

correspondence sent by Doran to that address were never received.  The Court finds nothing

invalid about Plaintiff's method of service, and thus the judgment is not void.

### B.      Rule 60(b)(1)—Excusable Neglect

Fed. R. Civ. P. 60(b) states that "[o]n motion and just terms, the court may relieve a party

or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect."  A motion to set aside judgment on the

basis of excusable neglect must be made within a reasonable time and no more than a year after

entry of judgment.[40]  However, "a motion is not timely merely because it has been filed within

one year of the judgment."[41]  The court should consider "the facts of each case, taking into

consideration the interest in finality, the reason for delay, the practical ability of the litigant to

learn earlier of the grounds relied upon, and prejudice to other parties."[42]  While there is a

preference for resolving disputes on their merits, "a workable system of justice requires that

---

[39]Hrg. Ex. 74.

[40]*See* Fed. R. Civ. P. 60(c)(1).  There is no similar time requirement for motions brought to set aside a judgment as void under Rule 60(b)(4).

[41]*White v. Am. Airlines, Inc.*, 915 F.2d 1414, 1425 (10th Cir. 1990).

[42]*Mullin v. High Mountain*, 182 F. App'x 830, 833 (10th Cir. 2006) (citation omitted).

litigants not be free to appear at their pleasure."[43]

The party moving to set aside the default judgment has the burden of pleading and proving excusable neglect and, only if he meets this burden, of showing a meritorious defense.[44] All doubts in this equitable analysis must be resolved in favor of the moving party.[45]  Factors in determining whether excusable neglect exists include: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.[46]

Defendant contends that its failure to appear was due to its failure to receive any of the certified mail notices sent to the Fall Leaf Road address.  Defendant urges that Plaintiff went to great lengths to avoid notifying Stonehouse of the existence of the lawsuit or the entry of judgment.  Defendant argues that as former counsel for Stonehouse, Doran was well aware of Ibrahim's home address and could have served process there or at one of the business offices. Plaintiff could also have requested waiver of service.  Instead, Defendant argues, Plaintiff utilized the "trap for corporate defendants" under Kansas law and used a method of service he knew would be unsuccessful.

 Ibrahim and Hayes testified at great length that they simply did not receive any of the certified mail notices sent to the Fall Leaf Road address.  While Ibrahim and Hayes are well-

---

[43]*Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983).

[44]*Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1172 (10th Cir. 2011) (citing *Cessna Fin. Corp.*, 715 F.2d at 1445).

[45]*Id.* (citing *Pioneer Ins. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

[46]*Id.*

educated, intelligent, and articulate, much of their testimony is not believable.  Their testimony, and portions of the record, are riddled with examples of their lack of credibility:

- Prior to entry of default judgment, no fewer than six notices of certified mail attempting to serve the summons and complaint were sent to the Fall Leaf Road address by Doran and the Secretary of State, yet the mail carrier for that route testified that no mail was left or stacked up in the mailbox;

- after entry of default judgment, no fewer than nine notices of certified mail were sent to the Fall Leaf road address by Doran, including the bill of costs, registration of foreign judgment, and state court proof of service; again, no mail was left or accumulated in the mailbox;

- Ibrahim testified that as part of her managerial duties Ms. Hayes picked up the mail at the Fall Leaf Road address most of the time, and would always claim certified mail if a notice was left in the mailbox;

- Hayes confirmed that the Fall Leaf Road address was her residence, but contradicted Ibrahim, in testifying that she does not pick up any mail for Stonehouse at that address, instead leaving it for Ibrahim;

- Ibrahim was aware of the significance of designating himself resident agent for Stonehouse and the Fall Leaf Road address as resident office, yet did not change the resident office until after moving to set aside default judgment in this case, despite prior service from the Secretary of State in other lawsuits;

- Ibrahim and Hayes insisted that Stonehouse could have been served at the P.O. Box in Lawrence, yet both testified that they did not receive any of the numerous correspondence and invoices mailed by Doran to that address;

- Ibrahim denied receiving any emails from Doran, despite verifying that the email address Doran used was correct; and

- Ibrahim was no stranger to lawsuits or default judgments  Both Stonehouse and other businesses owned by Ibrahim have been the subject of lawsuits on multiple occasions, and default judgment was entered in several cases.

Even if Ibrahim and Hayes's testimony was credible, however, Defendant has not demonstrated excusable neglect within the meaning of Rule 60(b)(1).  "Kansas courts have not articulated a definition for 'excusable neglect' as the phrase is not susceptible to a clear definition."[47]  Instead, courts determine what constitutes excusable neglect on a case-by-case basis based on the circumstances presented.[48]  "Kansas courts generally have held 'inexcusable neglect' to be similar to 'reckless indifference' and thus to imply something more than unintentional inadvertence or neglect common to all who share the ordinary frailties of mankind."[49] As the record shows, Ibrahim is a sophisticated businessman, who designated himself as the resident agent for Stonehouse and the Fall Leaf Road address as its registered

---

[47]*First Gen. Servs. of Kan. City, Inc. v. Nedrow*, 312 P.3d 398, *9 (Table) (Kan. Ct. App. Nov. 8, 2013).

[48]*Id.* (citing *Jenkins v. Arnold*, 573 P.2d 1013, 1016 (Kan. 1978)).

[49]*Id.*

23

office for at approximately twenty years; it was not until May of 2015 that the registered office was changed to Ibrahim's address in Lecompton.  K.S.A. § 17-6202 requires every corporation to have and maintain in this state a resident agent, which agent may be an individual resident in this state.  The resident agent "shall have a business office identical with the registered office which is generally open during normal business hours to accept service of process and otherwise perform the functions of a resident agent."[50]  A logical extension of this rule is that a corporation that fails to maintain an appropriate registered office and that fails to take steps to ensure that it is notified of claims pending against it, is guilty of inexcusable neglect.

In this case, Stonehouse's failure to monitor its corporate affairs is glaring, as it continued to maintain the Fall Leaf Road address as its registered office, despite the residence "not typically being occupied," despite not utilizing the residence as a business office, and despite the sporadic visits to pick up mail.  Indeed, Ibrahim testified that he used counsel as resident agent for other of his corporations, and was aware of the significance of designation of a resident agent for service. In the Court's view, had Stonehouse established a means to ensure that it was promptly informed of business matters, it would not have suffered the prejudice of which it now complains.  Accordingly, Stonehouse's own inexcusable neglect was responsible for its failure to appear in the action.[51]

The burden is upon the movant to have the judgment set aside and to plead and prove the

---

[50]K.S.A. § 17-6202.

[51]In so ruling, the Court notes that the other factors also weigh against Defendant's motion: Defendant waited over forty days after allegedly learning of the judgment to seek relief in this Court; the lengthy delay of these proceedings would prejudice Plaintiff; and the numerous discrepancies and misstatements in Ibrahim's testimony, as well as Hayes's phone call to Doran threatening an ethics complaint, indicate that Defendant did not act in good faith.

excusable neglect.  Defendant has not met this burden and the Court declines to set aside default judgment on this basis.[52]

### C.        Rule 60(b)(6)

Finally, Defendant argues that the unique circumstances of this case justify setting aside the default judgment under the Rule 60(b)(6) "catch all" provision.  Rule 60(b)(6) is referred to as a "grand reservoir of equitable power to do justice in a particular case."[53]  The Court has already found that Defendant's neglect in this case was inexcusable.  As the Supreme Court has explained, Rule 60(b)(6) goes further than 60(b)(1), and "[t]o justify relief under subsection (6), a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay."[54]  As the Court has already found that Defendant was not faultless in the delay, it may not seek relief under subsection (6) simply because it is unable to obtain relief under subsection (1).  Further, the Court does not find extraordinary circumstances present in this case.  Here, "[w]e do not have a case involving an uneducated [defendant], unaccustomed to litigation."[55]  Instead, the record suggests that Ibrahim regularly ignores process or service attempts, including the attempts in this case.  The Court declines to set aside judgment on this extraordinary basis.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Stonehouse

---

[52]Defendant argues that it has several meritorious defenses to the action, as it does not owe any legal fees and in fact, has overpaid Plaintiff for his efforts.  Defendant goes so far as to suggest Plaintiff manufactured after the fact the invoices and letters allegedly sent prior to the lawsuit.   Because Defendant has failed to show excusable neglect, the Court declines to consider Defendant's alleged meritorious defenses, but notes that the evidence and testimony supports Plaintiff's claim for unpaid legal services, despite Ibrahim's dissatisfaction with apparently favorable results.

[53]*Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990) (citation omitted).

[54]*Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 388 (1993).

[55]*See Pelican Prod. Corp.*, 893 F.2d at 1147 (comparing cases); *see also Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1446 (10th Cir. 1983) (finding sophistication of defendant made it unlikely that he did not know the need to respond to the complaint).

Rentals, Inc.'s Motion to Set Aside Entry of Default and Default Judgment (Doc. 12) is

DENIED.

**IT IS SO ORDERED.**

Dated: November 9, 2015

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE