# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**DORAN LAW OFFICE,**

    **Plaintiff,**

    v.

**STONEHOUSE RENTALS, INC.,**

    **Defendant.**

Case No. 2:14-2046-JAR-GLR

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Order Confirming United States Marshal's Sale of Real Estate (Doc. 46). Defendant objected to confirmation of the sale, and the Court held an evidentiary hearing. After considering the arguments, evidence, and testimony presented by the parties, the Court is prepared to rule. For the reasons set forth below, the Court denies confirmation of the sale.

## I.    Factual and Procedural Background

Patrick Doran, d/b/a Doran Law Office ("Doran"), filed this lawsuit against Stonehouse Rentals, Inc. ("Stonehouse") for unpaid legal fees. In June 2014, this Court granted Doran default judgment in the amount of $133,024.30, plus post-judgment interest.[1] In April 2014, Stonehouse moved to set aside the entry of default judgment and after an evidentiary hearing, this Court denied Stonehouse's motion.[2] The Tenth Circuit Court of Appeals affirmed this Court's findings.[3]

---

[1] Doc. 8.

[2] Doc. 19.

[3] *Doran Law Office v. Stonehouse Rentals, Inc.*, 678 F. App'x 733 (10th Cir. 2017).

After Doran obtained judgment against Stonehouse, he registered the judgment in various state courts, including Douglas County, Kansas District Court.[4] Doran proceeded to file a request for Writ of Specific Execution for a sale of three parcels of real estate in Lawrence, Kansas owned by Stonehouse, and a U.S. Marshal sale was set for May 22, 2017, at the Douglas County Courthouse, Lawrence, Kansas.[5] Stonehouse filed an Emergency Motion to Stay the sale on behalf of the interests of non-party T & A Rentals, who is purchasing the property on a contract for deed.[6] Magistrate Judge Gerald L. Rushfelt heard the motion by telephone conference, and denied Stonehouse's motion for lack of standing.[7]

The Marshal published a Notice of Sale in the Lawrence Journal-World once a week for four consecutive weeks prior to the date of sale, as provided by law, offering the property for sale at the front door of the Douglas County Courthouse, Lawrence, Kansas, on May 22, 2017.[8] The sale was held as scheduled. There were no bidders for two of the three properties; the second property, Unit 15-B on North Michigan Street in Lawrence, sold for the only bid of $10,000.00.[9] Stonehouse objected to confirmation of the sale.[10] At the evidentiary hearing, Stonehouse offered the testimony of two witnesses.

### *Cheri Hayes*

Hayes is the contract property manager for Stonehouse Rentals. Her responsibilities include showing and leasing properties, maintenance issues, and interaction with tenants. Hayes

---

[4]Doc. 18-2, Ex. 68.
[5]Docs. 27, 35.
[6]Doc. 38.
[7]Doc. 41.
[8]Doc. 50.
[9]Doc. 46.
[10]Doc. 47.

testified that Stonehouse Rentals owns properties in sixteen counties in Kansas, including Douglas County. Hayes has a general knowledge of the real estate market in the areas where Stonehouse owns properties. In her role with Stonehouse Rentals, she has been involved in the sheriff's sale process, and was present at the marshal's sale in this case.

Hayes testified that in Douglas County, there is an "old" courthouse and a newer judicial center that are adjacent to each other in Lawrence, Kansas. She testified that in her experience with sheriff's sales, the sales take place in the basement of the Judicial and Law Enforcement Center (the "Judicial Center"), which faces 11th Street. By contrast, the marshal's sale was noticed for and took place on the front steps of the old Douglas County Courthouse, which faces Massachusetts Street. Hayes testified she arrived thirty minutes early for the sale, and went to the clerk's office in the Judicial Center to clarify where the sale would be held; no one in the district court clerk's office was aware of the sale, however, which had been ordered by the federal district court. Hayes then met up with counsel and Ash and Nancy Ahmmed, owners of T & A Rentals, and they proceeded to the courthouse, where they found a marshal waiting on the front steps. The marshal identified himself to Hayes and the others, but did not have on a uniform and wore a jacket that covered his badge. There was one other person at the sale, who ultimately was the only bidder on the Michigan Street property at issue; the other two properties for sale did not receive any bids. No representatives of Stonehouse Rentals or Doran made any bids or credit bids at the sale.

Hayes testified that the Ahmmeds, who own T & A Rentals, were the owners of the Michigan Street property, having purchased the property on a contract for deed in April 2012 for $65,000.[11] On cross-examination, however, Hayes admitted that Stonehouse Rentals was

---

[11] Defendant's Ex. 803.

3

correctly identified as the owner of the property in the Notice of Sale published in the Lawrence Journal-World.

Hayes testified that she was familiar with the tax appraisal for the Michigan Street property, which she obtained from the Douglas County Appraiser's website, which was approximately $70,000. Hayes is not a licensed realtor or appraiser.

### Nancy Ahmmed

Nancy Ahmmed is the co-owner of T & A Rentals, Inc., which purchased the Michigan Street property from Stonehouse on a contract for deed in April 2012. She owns that company with her husband, Ashfaque Ahmmed. A portion of T & A Rentals, Inc.'s business is dedicated to residential rental properties, many of which the company purchased from Stonehouse Rentals starting in 2012. Ahmmed testified that T & A Rentals has purchased approximately ten properties from Stonehouse Rentals, that she was not aware of any lawsuits pending against Stonehouse, and that there was no mention that the properties were sold in relation to a lawsuit or legal proceedings. On cross-examination, Ahmmed admitted that she did not do any investigation prior to entering into the contract, and did not know when the instant lawsuit was filed against Stonehouse Rentals or when the judgment was entered in federal district court or registered in Douglas County.

Ahmmed testified that the contract for deed on the Michigan Street property was executed on April 1, 2012, and contained a balloon payment provision on April 1, 2014, whereby T & A Rentals was to make a good faith effort to refinance the property and pay the balance in full.[12] Ahmmed testified that T & A Rentals makes regular monthly payments to Stonehouse Rentals instead of the balloon payment, but that the contract for deed had not been modified.

---

[12] *Id.*

4

Ahmmed testified that the $65,000 purchase price for the property was the asking price, and that she believes the value of the property is around the same as the purchase price in 2012. There was no testimony about the amount of monthly payments or amount paid thus far by T & A Rentals toward the purchase price of the property.

Ahmmed further testified that she found out about the marshal's sale the morning of the sale when she went to a meeting with Cheri Hayes. Ahmmed met Hayes at the sale in the parking lot between the courthouse and the Judicial Center, then attended the sale on the courthouse steps. She confirmed that the marshal announced the sale and that there was one bidder. Ahmmed also confirmed that Stonehouse Rentals was the owner of record for the Michigan Street property, as well as the other properties T & A Rentals purchased, and that she had not recorded any of the contracts for deed.

### *Patrick Doran*

Doran did not call any witnesses. Instead, he asked the Court to take judicial notice of a number of returns from execution sales conducted by the Marshal in unrelated cases.[13] In each of these execution sales, the sale took place at the front door of the respective county courthouse. Doran also asked the Court to take notice of the low sale prices in the returns.

**II.     Applicable Law**

Federal courts "have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities."[14] Generally, the first step in enforcing a money judgment is to obtain a writ of execution.[15] Doran properly sought, and this

---

[13]Plaintiff's Ex. 1.

[14]*RMA Ventures of Cal. v. SunAmerica Life Ins. Co.*, 576 F.3d 1070, 1074 (10th Cir. 2009) (quoting *Degen v. United States*, 517 U.S. 820, 823 (1996)).

[15]*See* Fed. R. Civ. P. 69(a)(1).

5

Court was within its authority to issue, a writ of execution allowing Doran to collect on his money judgment. Once a federal district court issues a writ of execution, a judgment creditor must follow the procedure on execution "established by the law of the state in which the district court sits."[16] Thus, as required by Fed. R. Civ. P. 69(a)(1), Doran used the method of execution prescribed under Kansas law.

K.S.A. 60-2202(a) provides that a judgment in a civil action becomes a lien on the debtor's property located within the county where the judgment is "rendered." The statute provides a vehicle for the judgment creditor to "register" its judgment in the district court of another county, at which time the judgment becomes a lien on the debtor's real property in the registering county. The statute concludes that "[e]xecutions shall be issued only from the court in which the judgment is rendered."[17] Here, Doran registered his judgment obtained in federal district court in Douglas County, Kansas; the writ of execution was issued by this Court, and directed the sale to be held in Douglas County, Kansas.

As Doran notes, the issue here involves an execution sale as distinguished from a judicial sale. As the Kansas Supreme Court explained,

> The chief differences between execution and judicial sales are that the former are based on a general judgment for so much money, while the latter are based on an order to sell specific property; the former are conducted by an officer of the law in pursuance of the directions of a statute, while the latter are made by the agent of a court in pursuance of the directions of the court; in the former the sheriff is the vendor, in the latter the court.[18]

---

[16]*Id.*

[17]K.S.A. 60-2202(a).

[18]*Aguilera v. Corkhill*, 439 P.2d 93, 96–97 (Kan. 1968) (quoting *Lambert Lumber Co. v. Petrie,* 683 P.2d 518, 519 (Kan. 1963)).

In other words, "[i]n an execution sale in partial satisfaction of a money judgment, the sheriff is the seller, and he or she acts pursuant to statutory authority, particularly K.S.A. 60-2410."[19] Although Kansas statutes draw a distinction between judicial sales and execution sales, the district court's "equity powers" outlined in K.S.A. 60-2415(b) apply to both.[20]

K.S.A. 60-2410(a) sets out the notice requirements for sale of real property under execution:

> *Notice*. Lands and tenements taken on execution shall not be sold until the officer gives public notice of the time and place of sale once each week for three consecutive weeks prior to the day of sale, by publication in the county in which the judgment was rendered and in the county in which the land and tenements are located. Each such publication shall be in a newspaper which meets the requirements of K.S.A. 60-101 and amendments thereto and which is designated by the party ordering the sale. The last such publication shall not [be] less than seven days nor more than 14 days prior to the day of sale.

K.S.A. 60-2410(b) states that all sales of lands or tenements under execution "shall be held at the courthouse located in the county seat of the county in which the judgment was rendered."

K.S.A. 60-2415 controls the confirmation of a sheriff's sale and states:

(a) *Certificate of purchase.* The sheriff shall at once make a return of all sales made under this article to the court. All taxes due or delinquent shall be noted on the sheriff's return. If the court finds the proceedings regular and in conformity with law and equity, it shall confirm the same, direct the clerk to make such entry upon the journal and order the sheriff to make to the purchaser the certificate of sale or deed provided for in this article.

(b) *Equity powers of court.* The court may decline to confirm the sale where the bid is substantially inadequate, or in ordering a sale or a

---

[19]*Cent. Nat'l Bank v. Estate of Weber*, 408 P.3d 494, *3 (Table) (Kan. Ct. App. Dec. 22, 2017) (citing *Aguilera*, 439 P.2d at 96).

[20]*Id. See also Cimarron Feeders v. Bolle*, 17 P.3d 957, 966 (Kan. Ct. App. 2001) (declining to confirm execution sale when bid was substantially less than the full amount of the judgment and no hearing was held to determine whether the sale amount was adequate); K.S.A. 60-2410(d) (stating the sheriff shall execute a certificate to the purchaser "upon court order in accordance with K.S.A. 60-2415").

7

> resale, may, in its discretion, if conditions or circumstances warrant and after a proper hearing, fix a minimum or upset price at which the property must be bid in if the sale is to be confirmed; or the court may, upon application for the confirmation of the sale, if it has not theretofore fixed an upset price, conduct a hearing to establish the value of the property, and as a condition to confirmation require the fair value of the property be credited upon the judgment, interest, taxes and costs shall be deemed adequate.

## III.  Discussion

As a preliminary matter, Doran contends that by not appealing the Magistrate Judge's order denying its motion to stay the sale, Stonehouse waived any objections to confirmation of the sale.  As Doran noted at the hearing, however, any such waiver would be with respect to objections to the notice or lawfulness of the sale as opposed Stonehouse's right to contest the results of the sale.  Clearly, Stonehouse's objection to confirmation is the latter and thus there was no waiver stemming from the Magistrate Judge's denial of the motion for stay.[21]

Stonehouse objects to confirmation of the sale of the Michigan Street property on the grounds that the bid price of $10,000 is grossly inadequate and the circumstances of the sale amounted to "chilled bidding."  In Kansas, a party that objects to confirmation a sheriff's sale bears the burden of proving that the sale should not be confirmed.[22]  If the objection is based on the price, the objecting party must show that the price was so inadequate that it shocks the

---

[21]*See RMA Ventures Cal. v. SunAmerica Life Ins.*, 576 F.3d 1070, 1076 (10th Cir. 2009) (declining to consider plaintiff's arguments attacking lawfulness of execution sale where plaintiff did not appeal court's previous decision allowing the execution to proceed).

[22]*Barnett v. Oliver,* 858 P.2d 1228, 1239 (Kan. Ct. App. 1993). Stonehouse correctly notes that in the Tenth Circuit, "it is well settled that a judicial sale regularly made with notice and in the manner prescribed by law will not be denied confirmation or be set aside for mere inadequacy in price unless the price is so grossly inadequate as to shock the conscience of the court *and is coupled with* slight additional circumstances indicating unfairness such as chilled bidding." *Smith v. Juhan*, 311 F.2d 670, 672 (10th Cir. 1962) (discussing standards for setting aside confirmation of bankruptcy trustee's sale of real estate) (emphasis added).  The sale in this case is governed by Kansas law, however, which articulates a slightly less stringent standard for objecting to or setting aside confirmation of a sheriff's sale, as discussed above.

court's conscience: "[i]nadeqacy of the sale price is an insufficient ground unless it is so gross as to shock the conscience of the court, warranting an inference of fraud or imposition."[23]

Stonehouse devotes much of its objection to arguing that holding the sale at the front door of the Douglas County Courthouse instead of the adjacent Judicial Center caused confusion, which negatively impacted the bidding. This argument is not well taken. Section 60-2410(b) clearly regulates that an execution sale is to be held at the county courthouse. In this case, the front door of the courthouse is clearly designated "Douglas County Courthouse," and the marshal and the sole bidder were waiting on the front steps when Hayes and her party arrived.[24] The Court does not find Hayes's testimony credible on this issue, and it appears any purported confusion about the location of the sale was limited to hers.

Stonehouse next argues that the $10,000 bid was grossly inadequate. Kansas courts have held that facts supporting confirmation of a sheriff's sale must be supported by the record.[25] In *Olathe Bank v. Mann,* the Kansas Supreme Court explained,

> The facts and circumstances surrounding each sale must be considered in determining the fair market value at a confirmation hearing . . . [T]his means the trial court shall consider the local, long-term economic conditions; the type of property involved; its unique qualities, if any; its intrinsic worth; and other characteristics affecting the property's value.[26]

The Kansas Supreme Court described the "fair value" of real property, as the term is used in K.S.A. 60-2415(b), as "the intrinsic value" of the property, taking into account all of the

---

[23]*Barnett,* 858 P.2d at 1239 (citing four leading treatises and reiterating that "mere inadequacy of the foreclosure sale price will not invalidate the sale").

[24]Defendant's Ex. 802.

[25]*Citifinancial Mortg. Co., Inc. v. Clark,* 177 P.3d 986, 990 (Kan. Ct. App. 2008) (citing *Farm Credit Bank of Wichita v. Zerr*, 915 P.2d 137, 143 (Kan. Ct. App. 1996); *Cimarron Feeders v. Bolle*, 17 P.3d 957, 966 (Kan. Ct. App. 2001)).

[26]*Olathe Bank v. Mann,* 845 P.2d 639, 646 (Kan. 1993) (internal citation omitted).

circumstances bearing on its worth at the time of the sale.[27]  "'Fair value' is not market value, fair market value, reconstruction or replacement value alone, nor is it the highest and best price that the property would bring in cash.  'Fair value' means value of the property which will produce a fair and equitable result between the parties."[28]

In this case, the sole bidder purchased the Michigan Street property for an apparent "fire sale" price substantially less than the full amount of the judgment, leaving a deficiency balance of over $123,000 plus interest.  The record before the Court, however, offers limited evidence supporting the fair value of the Michigan Street property at issue or whether the $10,000 bid is low enough to shock the conscience of the Court.  On one hand, Stonehouse offered testimony of Cheri Hayes, who testified that she was familiar with the tax appraisal for the property, which she obtained from the Douglas County Appraiser's website, and that the tax appraisal was approximately $70,000.[29]  Nancy Ahmed also testified that she and her husband purchased the property on a contract for deed for $65,000.  The timing and circumstances surrounding the contact for deed, however, coupled with the lack of information about any actual payments by T & A Rentals to Stonehouse, offers the Court little to no evidence to support the actual fair value of the property.  Significantly, neither witness provided an appraisal, any photos of the property or information about its condition, or any documentary information showing the property was rented and at what rate.

On the other hand, Doran did not call any witnesses at all, instead arguing that execution sales such as this one often result in low bids, relying on sales in unrelated cases without any context or information about the properties sold.  Doran suggests that confirmation standards for

---

[27]*Id.* at 647.

[28]*Id.*

[29]Doc. 47, Ex. 2.

an execution sale are different than for a judicial sale.  But as Kansas case law makes clear, execution sales are subject to the Court's equity powers set out in K.S.A. 60-2415(b), which requires the Court to base its decision on a record that supports the fair value of the property at issue.[30]  Applying Kansas law, the Court finds that confirmation of the sale based on the record before it would constitute an abuse of discretion.  Accordingly, the Court has no choice but to decline to confirm the sale.

This leaves the Court with two options: order a resale of the property, or give Doran the option of crediting fair value of the property to the judgment or reselling the property.[31]  Because Doran did not bid on the property, however, there is little incentive for him to credit his judgment with the value of the property over the successful $10,000 bid.  Accordingly, the Court opts to order the resale of the property, upon Doran's application for a second writ of execution.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff Doran Law Office's Motion for Order Confirming United States Marshal's Sale of Real Estate (Doc. 46) is **denied**; the Court orders resale of the property, upon Plaintiff's application for writ of execution; the clerk's office shall return the payment to the successful bidder.

**IT IS SO ORDERED.**

Dated: <u>March 23, 2018</u>

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[30]*See Cent. Nat'l Bank v. Estate of Weber*, 408 P.3d 494, *3 (Table) (Kan. Ct. App. Dec. 28, 2016); *Cimarron Feeders v. Bolle*, 17 P.3d 957, 966 (Kan. Ct. App. 2001) (holding trial court erred by failing to hold evidentiary hearing to determine if sale price was adequate).

[31]*Olathe Bank,* 845 P.2d at 643 (citation omitted).